<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF NEW JERSEY</u>

_____
                                :

FANTIS IMPORTS, INC.,            :

                                :

        Plaintiff,          :

                                :         Civil Action No. 07-0544 (JAG)

              v.           :

                                :           **OPINION**

HELLAS IMPORT, LTD.,        :

                                :

        Defendant.      :
_____:

<u>GREENAWAY, JR., U.S.D.J.</u>

       This matter comes before this Court on Defendant Hellas Import, Ltd.'s ("Defendant" or "Hellas") motion to dismiss for lack of personal jurisdiction, pursuant to FED. R. CIV. P. 12(b)(2), and for improper venue, pursuant to FED. R. CIV. P. 12(b)(3).  For the reasons set forth below, Defendant's motion to dismiss for lack of personal jurisdiction will be granted, and Defendant's motion to dismiss for improper venue will be denied, as moot.

## I.  BACKGROUND

Plaintiff Fantis Imports, Inc. ("Plaintiff" or "Fantis") is a New Jersey corporation that, as of 2006, is a licensee of Mythos Brewery, S.A. ("Mythos").[1]  (Complaint ("Compl.") ¶ 1.)  Fantis imports and distributes Mythos Beer in several states, including New Jersey.[2]  (Id.)  Hellas is a Massachusetts corporation that claims it has the exclusive right to distribute Mythos Beer in the United States.  (Id. ¶ 2.)  Fantis alleges that Hellas sent a letter to Mythos in Greece, demanding that Mythos stop selling Mythos Beer to Fantis.  (Id. ¶ 2.)  This, according to Fantis, prompted Mythos to stop sales to Fantis temporarily.  (Id. ¶ 9.)

On or about December 28, 2006, Plaintiff filed suit against Defendant in the Superior Court of New Jersey, Law Division, Bergen County, alleging that Defendant tortiously interfered with a contractual right.  On February 1, 2007, Defendant removed the action to this Court, pursuant to 28 U.S.C. § 1441, on the ground that this Court has original jurisdiction over the matter, pursuant to 28 U.S.C. § 1332.  On February 21, 2007, Defendant filed the pending motion to dismiss.

## II.  LEGAL STANDARD

### A.  Personal Jurisdiction

A federal court sitting in diversity must conduct a two-step analysis to ascertain whether personal jurisdiction exists.  First, the court must look to the forum state's long-arm statute to

---

[1] Fantis fails to aver the location of Mythos' headquarters and production plant in the Complaint.  However, in its briefs, Fantis asserts that Mythos' headquarters and production plant are in Greece.  Hellas does not dispute this assertion, and this Court need not resolve this issue.

[2] According to the Complaint, Fantis is also the importer and distributor of Mythos Beer in New York, Illinois, California, and Florida.  (Compl. ¶ 1.)

determine if personal jurisdiction is permitted over the defendant.  Second, the court must determine whether the exercise of jurisdiction violates Due Process of the Fourteenth Amendment.  See IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998); Vetrotex Certaineed Corp. v. Consolidated Fiber Glass Products Co., 75 F.3d 147, 150 (3d Cir. 1996).  In this forum, the inquiry is collapsed into a single step, because New Jersey's long arm statute permits the exercise of personal jurisdiction to the fullest limits of due process, as defined under the Constitution of the United States.  As such, federal law defines the parameters of this Court's in personam jurisdiction.  See IMO Indus., Inc., 155 F.3d at 259.

The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state defendant only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  The plaintiff has the burden of proving that the defendant purposefully availed itself of the forum state.  Burke v. Quartey, 969 F. Supp. 921, 924 (D.N.J. 1997).

Specific jurisdiction is invoked when a claim is related to or arises out of the defendant's contacts with the forum.  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-14 (1984).  A court must first determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (citations omitted).  What constitutes minimum contacts varies with the "quality and nature of defendant's activity."  Hanson, 357 U.S. at 253.  In assessing the sufficiency of minimum contacts for personal jurisdiction, the court must focus on the "relationship among the defendant, the forum,

and the litigation." Keeton v. Hustler, 465 U.S. 770, 775 (1984). Otherwise stated, there must be at least "a single deliberate contact" with the forum state that relates to the cause of action. United States Golf Ass'n v. United States Amateur Golf Ass'n, 690 F. Supp. 317, 320 (D.N.J. 1988). The unilateral acts of the plaintiff, however, will not amount to minimum contacts. Helicopteros Nacionales de Colombia, 466 U.S. at 414; Hansen, 257 U.S. at 253. The burden to produce actual evidence of the defendant's contacts with the forum state rests on the plaintiff. See Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984).

Assuming minimum contacts have been established, a court must then consider whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)); see also Pennzoil Prod. Co. v. Colelli & Assoc. Inc., 149 F.3d 197, 201 (3d Cir. 1998). For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state. World-Wide Volkswagen, 444 U.S. at 292. To determine reasonableness, a court considers the following factors: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering substantive social policies. Id. Only in "rare cases [do the] minimum requirements inherent in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities." Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County, 480 U.S. 102, 116 (1987) (Brennan, J., concurring) (quotations omitted); Pennzoil, 149 F.3d at 207.

4

If the plaintiff cannot establish specific jurisdiction, a court may exercise general jurisdiction over the defendant if the defendant has maintained "continuous and systematic" contacts with the forum state.  Helicopteros Nacionales de Colombia, 466 U.S. at 416.  To establish general jurisdiction, the plaintiff "must show significantly more than mere minimum contacts" with the forum state.  Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987).  Moreover, the facts required to establish general jurisdiction must be "extensive and persuasive."  Reliance Steel Prods. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982).

A particular defendant may be dismissed from a lawsuit if the court cannot assert personal jurisdiction over the defendant, pursuant to this standard.  FED. R. CIV. P. 12(b)(2).

**B.     Venue**

28 U.S.C. § 1391(a) provides that venue is proper in a district for an action based solely on diversity jurisdiction: 1) where any defendant resides, if all defendants reside in the same state; 2) where a substantial part of the events occurred that give rise to the claim; or, in the event that neither 1) nor 2) is proper, 3) where any defendant is subject to personal jurisdiction.  A defendant corporation is deemed to reside, for purposes of venue under 28 U.S.C. § 1391, in any judicial district in which the corporation is subject to personal jurisdiction at the time litigation is commenced.  28 U.S.C. § 1391(c).

The substantiality requirement of 28 U.S.C. § 1391(a)(2) is designed to protect the defendant from being "haled into a remote district having no real relationship to the dispute" based on events having only a "tangential connection" with the forum.  Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994).

In cases where the defendant removes an action from state court to federal court, 28 U.S.C. § 1441(a) governs venue.  Polizzi v. Cowles Magazine, Inc., 345 U.S. 663, 665 (1953). The proper venue in cases involving removal is the district that embraces where the action was pending.  28 U.S.C. § 1441(a).

## III.  DISCUSSION

**Personal Jurisdiction Over Hellas**

Hellas argues that this Court does not have specific personal jurisdiction over it because it has insufficient contacts with New Jersey.[3]  Hellas specifically claims, pursuant to what has been coined the "Calder effects test," that New Jersey was not the focal point of the alleged tortious conduct.  Fantis counters that this Court has personal jurisdiction over Hellas because, by sending the letter to Mythos in Greece, Hellas expressly targeted Fantis in New Jersey.

In Calder v. Jones, 465 U.S. 783 (1984), the Supreme Court analyzed the exercise of specific personal jurisdiction over nonresident defendants who allegedly committed an intentional tort.  In Calder, entertainer Shirley Jones, a California resident, brought a libel claim in a California federal court against an author and an editor, both residents of Florida, regarding an article written for, and published in, the National Enquirer in California.  Id. at 785.  The Court concluded that the California court had personal jurisdiction over the defendants because the defendants had sufficient minimum contacts with California.  In discussing the nature of the contacts, the Court noted, "California [was] the focal point both of the story and of the harm suffered."  Id. at 789.

---

[3] Fantis does not claim that Hellas is subject to general personal jurisdiction in New Jersey.  In any case, this Court concludes that Hellas lacks the necessary "continuous and systematic" contacts with New Jersey for it to be subject to general personal jurisdiction in New Jersey.  Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 416 (1984).

      The Third Circuit relied on <u>Calder</u> to adopt a three-part test, based on the traditional minimum contacts analysis, to determine if a nonresident defendant who allegedly committed an intentional tort is subject to personal jurisdiction in the forum state:

> First, the defendant must have committed an intentional tort. Second, the plaintiff must have felt the brunt of the harm caused by that tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort. Third, the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

<u>IMO Industries, Inc. v. Kiekert AG</u>, 155 F.3d 254, 256 (3d Cir. 1998).

      In <u>IMO</u>, the plaintiff, a multinational corporation with its principal place of business in New Jersey, filed suit in the District Court of New Jersey against a German corporation, alleging that the defendant tortiously interfered with the plaintiff's attempt to sell its Italian subsidiary to a French corporation. <u>Id.</u> The defendant, which had a licensing agreement with the Italian subsidiary, allegedly threatened to terminate the licensing agreement if the Italian subsidiary was sold to the French corporation, its competitor. <u>Id.</u>

      The plaintiff alleged that the following contacts subjected the defendant to personal jurisdiction in New Jersey: 1) a letter by the defendant to the Italian subsidiary; 2) a letter by the defendant to the plaintiff's New York investment firm; 3) phone calls initiated by the plaintiff in New Jersey to the defendant; and 4) meetings between the plaintiff and the defendant in Toronto and Germany. <u>Id.</u> at 267. The defendant moved to dismiss the complaint on the ground that it was not subject to personal jurisdiction in New Jersey. <u>Id.</u> at 256.

      The district court granted the defendant's motion, and the Third Circuit affirmed. <u>Id.</u> The Third Circuit held that the defendant did not "expressly aim[ ]" its conduct at New Jersey; rather, the defendant's conduct was directed at Italy and New York. <u>Id.</u> at 266-68.

7

Here, Fantis argues that Hellas targeted New Jersey when Hellas sent a letter to Mythos in Greece demanding that it cease sales to Fantis.  (Plaintiff's Brief in Opposition to Defendant's Notice of Motion to Dismiss the Complaint for Lack of Personal Jurisdiction or, in the Alternative, Improper Venue ("Pl.'s Opp. Br.") 7.)  Hellas claims that it is not subject to specific personal jurisdiction in New Jersey because, as in <u>IMO</u>, Hellas did not "expressly aim" its tortious conduct at New Jersey such that New Jersey can constitute the focal point of the tortious conduct, under the third prong of the <u>Calder</u> effects test.[4]  (Defendant's Memorandum of Law in Support of Motion to Dismiss ("Defs.' Mot. to Dismiss") 6.)  This Court agrees with Hellas.

Hellas' letter targeted Fantis by seeking to cut off Mythos' business relationship with Fantis.[5]  The letter states, in pertinent part:

> [Hellas] hereby demand[s] that Mythos immediately suspend any and all dealing with Fantis, and that it cease and desist from selling any further Mythos Beer to Fantis or any other customer for resale in the United States.  Any shipment already made to Fantis should immediately be recalled.

(Letter from Andre R. Jaglom to John Kamviselis (July 12, 2006), attached as Ex. D to Affidavit of Jerry G. Makris ("Makris Aff.").)

Fantis argues that, since Hellas "knew[,] at all relevant times[,] where Fantis was located," the focal point of its allegedly tortious conduct was aimed at New Jersey. (Pl.'s Opp.

---

[4] Hellas also claims, briefly in a footnote, that neither of the first two prongs of the <u>Calder</u> effects test are satisfied.  Since this Court shall grant Hellas' motion to dismiss, pursuant to the third prong of the <u>Calder</u> effects test, this Court need not address these arguments.

[5] Hellas asserts that its letter targeted Mythos, solely, because Hellas was unconcerned with whom Mythos was selling Mythos Beer to in violation of Hellas' exclusivity rights. (Defendant's Reply Memorandum of Law in Support of Motion to Dismiss ("Defs.' Reply") 1.) This Court rejects this argument.  It is clear from the face of Hellas' correspondence that Hellas intended to interfere with Fantis' contractual rights, whether it be directly or indirectly.

8

Br. 1.; Makris Aff. ¶ 6) ("Representatives of Hellas [in the past] have come to New Jersey to pay for and pick up [unrelated] product . . . .  It certainly knew[,] at all relevant times[,] that Fantis was headquartered in New Jersey.").[6]

Hellas' knowledge of Fantis' location in New Jersey is an insufficient basis for this Court to exercise specific personal jurisdiction over Hellas.  Fantis fails to recognize the distinction between conduct directed at a corporation in New Jersey, and conduct directed at a corporation, which is fortuitously located in New Jersey.  Although this distinction may seem like an exercise in semantics, it is relevant to this Court's determination of whether Hellas' tortious conduct was directed at Fantis in the State of New Jersey.

Hellas cannot be subject to personal jurisdiction in New Jersey simply because Hellas was aware, at the time it sent the letter, that Fantis was located in New Jersey.  See IMO, 155 F.3d at 267 ("While knowledge that the plaintiff is located in the forum is necessary to the application of Calder, as discussed above it alone is insufficient to satisfy the targeting prong of the effects test.").  Tortious conduct does not necessarily expressly target a party in that party's home forum.  See, e.g., Remick v. Manfredy, 238 F.3d 248, 259 (3d Cir. 2001) (holding that district court does not have jurisdiction over the plaintiff's claim for misappropriation of image because posting the plaintiff's picture on the Internet does not mean that the plaintiff's home forum was the target of the tortious conduct, since the Internet is accessible worldwide).

To set forth a basis for this Court to exercise personal jurisdiction over Hellas, Fantis

---

[6] Hellas' past contacts with Fantis, in New Jersey, do not support the exercise of specific personal jurisdiction over Hellas because Fantis' claim is unrelated to, and does not arise out of, Hellas' past contacts.  See Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 416 (1984).

relies on Remick v. Manfredy, 238 F.3d 248 (3d Cir. 2001), and Wellness Publ'g v. Barefoot, 128 F. App'x 266 (3d Cir. 2005) (per curiam), in which the Third Circuit held that the district court could exercise personal jurisdiction over non-resident defendants that allegedly tortiously interfered with contracts.  These cases, however, are inapposite.

In Remick, Angel Manfredy, a lightweight professional boxer, negotiated and entered into a contract with Lloyd Remick, a sports attorney whose office was located in Pennsylvania, under which Remick represented Angel Manfredy in the procurement of fights, promotions, and endorsements.  Remick, 238 F.3d at 252-53.  Remick represented Angel Manfredy in this capacity for a period of time, until Angel Manfredy sent Remick a letter terminating the relationship.  Id.  Remick sued defendants John Manfredy (Angel Manfredy's agent) and Jeffrey Brown alleging, inter alia, tortious interference with a contractual relationship.  Id. at 260. Remick claimed that John Manfredy and Brown set Remick up to fail in his negotiations for a boxing match, which led Angel Manfredy to fire Remick.  Id.

The Third Circuit reversed the lower court's decision granting the defendants' motion to dismiss.  After applying the Calder effects test, the Third Circuit held that the district court had personal jurisdiction over John Manfredy and Brown on the claim for tortious interference with a contract.  Id.  To support its decision, the Third Circuit explained that,

> [a]lbeit a tort, [this claim] is necessarily related to the contract which [Remick] had entered into with [Angel] Manfredy and which is the subject of the alleged tortious interference. Remick asserts in his affidavit that he conducted the majority of his negotiation, consultation, and advice services for [Angel] Manfredy out of his Philadelphia office.  Accepting that assertion as true, it follows that the effects of any intentional conduct by the defendants designed to interfere with Remick's contractual relations with [Angel] Manfredy necessarily would have been felt in Pennsylvania.

10

Remick, 238 F.3d at 260.

Fantis' reliance on this portion of the Third Circuit's opinion is inconsequential, since the Third Circuit's analysis focused on whether Remick was harmed in Pennsylvania sufficiently to satisfy the *second* prong of the Calder effects test.  This portion of the Third Circuit's opinion does not address the question at issue in this case, namely, what state was the focal point of the tortious conduct under the *third* prong of the Calder effects test.

To address the third prong of the Calder effects test, the Third Circuit stated that,

> unlike the case in IMO Industries, where the German defendant's alleged tortious conduct appeared to have been expressly aimed at injuring a French company and not the in-forum plaintiff, in this case Brown and John Manfredy's alleged tortious conduct was expressly aimed at injuring Remick in Pennsylvania where he lives and works.

Id.

Even given the Third Circuit's analysis of the third prong in Remick, there exists no basis on which Fantis could claim that this Court can exercise personal jurisdiction over Hellas.  In Remick, the defendants were Angel Manfredy's advisors.  Id. at 252.  The defendants not only participated in the formation of the contract between Angel Manfredy and Remick, but they also negotiated deals with Remick, on behalf of Angel Manfredy.  Id. at 253.  Moreover, Remick performed the majority of his services for Angel Manfredy out of his Pennsylvania office.  Id. at 260.  It follows that John Manfredy and Brown expressly targeted Remick in Pennsylvania because the two men not only knew that Remick worked in Pennsylvania, but they also worked with Remick while he performed his services from Pennsylvania.

Here, Fantis and Hellas had no preexisting business relationship at the time of the alleged

tortious conduct.  Although Hellas knew that Fantis was located in New Jersey, it does not follow that Hellas' actions were targeted to affect Fantis in New Jersey.

Fantis' reliance on <u>Wellness Publ'g v. Barefoot</u>, 128 F. App'x 266 (3d Cir. 2005) (per curiam) is equally unavailing.  In <u>Wellness</u>, Stephen Holt filed suit against several defendants, arguing that defendants tortiously interfered with a contract existing between Holt and Robert Barefoot by featuring Barefoot in the defendants' infomercials, and using Barefoot to promote their product.  <u>Id.</u> at 270.  The Third Circuit held that personal jurisdiction over the defendants for the tortious interference claim would be proper:

> Holt, as a resident of New Jersey, suffered the alleged injury resulting from [the defendants'] intentional conduct in New Jersey.  In this sense, although [the defendants'] business strategy may not have targeted New Jersey, with regard to Holt's contract with Barefoot, [the defendants'] alleged intentional interference was expressly aimed at the forum.

<u>Id.</u>

The facts of <u>Wellness</u> are clearly distinguishable.  In <u>Wellness</u>, Holt's "claims concern[ed] the advertising, sale, and distribution of coral calcium supplements and related promotional materials" in New Jersey.  <u>Id.</u> at 268.  "There was nothing fortuitous about the presence of these books in New Jersey . . . ."  <u>Id.</u> at 269.  Holt undoubtedly was targeted expressly by the defendants in New Jersey because the defendants actively directed its tortious conduct at New Jersey.

In contrast, the single letter sent by Hellas to Mythos, in Greece, in which Fantis was named, does not indicate that New Jersey was expressly targeted.  In writing the letter, Hellas intended to reclaim its exclusive contract with Mythos.  Any effect it had on Fantis in New Jersey was inconsequential, secondary, and unintentional.

12

The <u>Calder</u> effects test was not intended to displace the traditional minimum contacts analysis.  <u>IMO Industries, Inc. v. Kiekert AG</u>, 155 F.3d 254, 256 (3d Cir. 1998) ("[U]nder <u>Calder</u>, an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied").

In this case, Hellas' otherwise insufficient contacts with New Jersey are not rendered sufficient under the <u>Calder</u> effects test.[7]  If this Court agreed with Fantis, then every plaintiff would be able to litigate in its home forum, pursuant to the <u>Calder</u> effects test.  Such a broad interpretation of the Supreme Court's personal jurisdiction jurisprudence is neither logical nor prudent.

Hellas is not subject to specific personal jurisdiction in New Jersey.  Hellas' motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(2), shall be granted.[8]

---

[7] Fantis does not argue that personal jurisdiction over Hellas would be proper absent the <u>Calder</u> effects test.

[8] Since this Court grants the motion to dismiss for lack of personal jurisdiction, this Court need not decide whether venue in this Court is proper.  The motion to dismiss for improper venue is denied as moot.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above, Defendant's motion to dismiss for lack of personal jurisdiction, pursuant to FED. R. CIV. P. 12(b)(2), shall be granted.  Hellas had insufficient contacts with New Jersey to establish personal jurisdiction.  Defendant's motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(3), shall be denied, as moot.

 S/Joseph A. Greenaway, Jr._____
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: April 17, 2008